UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
INTERNATIONAL BUSINESS            :
MACHINES CORPORATION,             :      13 Civ. 1273 (KMK) (PED)
                                  :
                 Plaintiff,       :
                                  :
      - against -                 :      **ANSWER AND**
                                  :      **COUNTERCLAIMS**
CHARLES VINCENT,                  :
                                  :
                 Defendant.       :
------------------------------------------------------------------- X

      Defendant, Charles Vincent ("Vincent"), by his attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, answers the complaint of Plaintiff, International Business Machines Corporation ("IBM"), as follows:

      1.     Vincent denies the allegations of paragraph 1 of the complaint except admits that IBM purports to request the relief described therein and denies that IBM is entitled to such relief.

      2.     Vincent denies the allegations of paragraph 2 of the complaint.

      3.     With respect to the allegations in paragraph 3 of the complaint, Vincent respectfully refers the Court to the LTPP referred to therein for a true and complete statement of its contents.

      4.     Vincent denies the allegations of paragraph 4 of the complaint and avers that by letter dated November 16, 2012 Vincent resigned from IBM Nederland BV effective December 31, 2012.

      5.     Vincent denies the allegations of paragraph 5 of the complaint, and avers that on January 1, 2013 Vincent began working for PT PricewaterhouseCoopers Indonesia Advisory ("PwC Indonesia") as Lead Partner PwC Indonesia Consulting.

      6.     Vincent denies the allegations contained in paragraph 6 of the complaint.

7. Vincent denies the allegations contained in paragraph 7 of the complaint.

8. Vincent denies the allegations contained in paragraph 8 of the complaint.

9. Vincent denies knowledge or information sufficient to form a belief about the allegations contained in paragraph 9 of the complaint.

10. Vincent denies the allegations of paragraph 10 of the complaint and avers that he resides in Jakarta, Indonesia.

11. Vincent denies the allegations contained in paragraph 11 of the complaint.

12. Vincent denies knowledge or information sufficient to form a belief about the allegations contained in paragraph 12 of the complaint.

13. Vincent denies knowledge or information sufficient to form a belief about the allegations contained in paragraph 13 of the complaint.

14. Vincent denies knowledge or information sufficient to form a belief about the allegations contained in paragraph 14 of the complaint.

15. With respect to the allegations in paragraph 15 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents.

16. With respect to the allegations in paragraph 16 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents.

17. With respect to the allegations in paragraph 17 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents.

18. With respect to the allegations in the first sentence of paragraph 18 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents. With respect to the allegations in the second sentence of paragraph 18 of the complaint, Vincent denies knowledge or information sufficient to form a belief about the allegations contained therein.

19. With respect to the allegations in paragraph 19 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents.

20. Vincent denies the allegations contained in paragraph 20 of the complaint.

21. With respect to the allegations in paragraph 21 of the complaint, Vincent respectfully refers the Court to the Terms and Conditions referred to therein for a true and complete statement of its contents.

22. With respect to the allegations in the first sentence of paragraph 22 of the complaint, Vincent respectfully refers the Court to the Plan Prospectus referred to therein for a true and complete statement of its contents. With respect to the allegations in the second sentence of paragraph 22 of the complaint, Vincent respectfully refers the Court to the Terms and Conditions referred to therein for a true and complete statement of its contents.

23. With respect to the allegations in the first and second sentences of paragraph 23 of the complaint, Vincent denies the allegations therein and avers that he began his employment with IBM Nederland NV on August 27, 2002 and has held a variety of positions since then. With respect to the allegations in the third sentence of paragraph 23 of the complaint, Vincent admits the allegations therein.

24. Vincent admits the allegations contained in paragraph 24 of the complaint.

25. Vincent denies the allegations contained in paragraph 25 of the complaint.

26. Vincent denies the allegations contained in paragraph 26 of the complaint.

27. Vincent denies the allegations contained in paragraph 27 of the complaint.

28. Vincent denies the allegations of paragraph 28 of the complaint and avers that on November 12, 2012 Vincent informed his direct supervisor in IBM GBS Growth Markets, Randy Walker, of his intention to leave IBM Nederland BV in a telephone conversation. Vincent further avers that on November 15, 2012 he also advised two IBM Human Resources executives, Belinda Tang and Betty Spiele, by telephone, of his departure and on November 16, 2012 similarly informed another IBM executive, Luq Naizi, by telephone, of his departure. Vincent further avers that by letter dated November 16, 2012 Vincent then resigned from IBM Nederland BV effective December 31, 2012.

29. With respect to the allegations in the first sentence of paragraph 29 of the complaint, Vincent admits the allegations therein. With respect to the allegations in the second sentence of paragraph 29 of the complaint, Vincent denies the allegations therein and avers that on January 1, 2013 he began working for PwC Indonesia.

30. Vincent denies the allegations contained in paragraph 30 of the complaint.

31. Vincent denies the allegations of paragraph 31 and avers that when he informed several IBM executives of his plans to leave IBM Nederland and go work for PwC Indonesia as Lead Partner Consulting, he was told that there was no competition issue. It was not until weeks later, by letter dated December 7, 2012, that IBM Nederland BV informed him of its belief that Vincent's new employment would violate the terms of the agreements governing his equity grants and reserved its rights to invoke all possibilities for rescission of his equity grants.

32. Vincent denies the allegations of paragraph 32 and avers that IBM has not requested that he return $911,274 in equity awards, nor is there any basis for the rescission of his equity awards, and, accordingly, he has not repaid any equity awards to IBM.

33. With respect to the allegations contained in paragraph 33 of the Complaint, Vincent repeats his responses to the paragraphs incorporated by reference.

34. Vincent denies the allegations contained in paragraph 34 of the complaint.

35. Vincent denies the allegations contained in paragraph 35 of the complaint.

36. Vincent denies the allegations contained in paragraph 36 of the complaint.

37. With respect to the allegations contained in paragraph 37 of the Complaint, Vincent repeats his responses to the paragraphs incorporated by reference.

38. Vincent denies the allegations contained in paragraph 38 of the complaint.

39. Vincent denies the allegations contained in paragraph 39 of the complaint.

40. Vincent denies the allegations contained in paragraph 40 of the complaint.

41. Vincent denies the allegations contained in paragraph 41 of the complaint.

42. With respect to the allegations contained in paragraph 42 of the Complaint, Vincent repeats his responses to the paragraphs incorporated by reference.

43. Vincent denies the allegations contained in paragraph 43 of the complaint.

## AFFIRMATIVE DEFENSES

Further answering by way of affirmative defense, and without waiver of the denials made in his answer, Vincent states as follows:

## FIRST AFFIRMATIVE DEFENSE

44. IBM fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

45. IBM's claims are barred by waiver.

## THIRD AFFIRMATIVE DEFENSE

46. IBM's claims are barred by estoppel.

## FOURTH AFFIRMATIVE DEFENSE

47. IBM's claims are barred in whole or in part because the relief sought would result in Plaintiff's unjust enrichment.

## FIFTH AFFIRMATIVE DEFENSE

48. Vincent's prior employer, IBM Nederland NV, and his current employer, PwC Indonesia, are not competitors.

## SIXTH AFFIRMATIVE DEFENSE

49. The non-competition requirement in the LTPP is unreasonable and cannot be enforced.

50. Under New York law, restrictive covenants in the employment context will be enforced only to the extent they are reasonable and necessary to protect valid business interests.

51. Although New York courts have enforced restrictive covenants without regard to their reasonableness if the employee was afforded the choice between not competing, and thereby preserving his benefits, or competing, and thereby risking forfeiture, Vincent has not been afforded such a choice here and the reasonableness requirement will apply.

52. IBM has taken legal action against Vincent to prevent his employment with PwC Indonesia, an alleged competitor, as demonstrated by the interim injunction proceedings in the Court in Amsterdam, IBM Nederland BV v. Charles C.J. Vincent, # 1409654 KK 13-158, thus depriving Vincent of any choice.

53.    Accordingly, the more restrictive "reasonableness" standard will apply and the unreasonable restrictive covenant in the LTPP is unenforceable.

### SEVENTH AFFIRMATIVE DEFENSE

54.    The Court lacks personal jurisdiction over Vincent and jurisdiction of the case because there was no binding agreement by the parties that the courts of New York would have jurisdiction, and the State of New York has no other relevant connection to Vincent or the facts of the case.

### EIGHTH AFFIRMATIVE DEFENSE

55.    The complaint should be dismissed on the ground of *forum non conveniens*.

### COUNTERCLAIMS

Vincent asserts these counterclaims against IBM as follows:

### Background

56.    Vincent began his employment with IBM Nederland NV on August 27, 2002.

57.    Upon information and belief, IBM Nederland NV was converted into IBM Nederland BV on June 30, 2006. (The two entities are collectively referred to herein as "IBM Nederland".)

### The Stock Options

58.    During his employment with IBM Nederland, Vincent was granted IBM Restricted Stock Units (the "Shares") and Stock Options (the "Options") under IBM's Long Term Performance Plan and Equity Award Agreement (the "LTPP").

59.    The Options were awarded on February 25, 2003 and March 8, 2005.

60.    Morgan Stanley was hired to administer the Shares and the Options on behalf of Vincent.

61. In July 2012, Vincent asked Morgan Stanley to sell all Shares and execute the Options.

62. In October 2012, Vincent requested that Morgan Stanley transfer the post-tax cash amount to his Dutch bank account.

63. Vincent was under the impression that all his Shares and Options were transferred into cash in July 2012 and the post-tax cash amounts transferred to his Dutch bank account in October 2012, in accordance with his instructions.

### Vincent Announces His Plans To Leave IBM Nederland

64. On November 12, 2012 Vincent called his direct supervisor in Shanghai, Randy Walker, an IBM executive, and informed him of his intention to leave IBM Nederland.

65. Vincent further informed Mr. Walker of his intention to work for PwC Indonesia as Lead Partner Consulting after his departure from IBM Nederland.

66. Mr. Walker responded that PwC Indonesia is very small and not in the market.

67. On November 15, Vincent called Belinda Tang, an IBM Human Resources executive, and similarly informed her of his plans to leave IBM Nederland and begin employment with PwC Indonesia as Lead Partner Consulting.

68. Ms. Tang referred to the fact that Vincent had a non-competition agreement with IBM Nederland but that IBM and PwC are not actual competitors.

69. Vincent had similar phone calls with Betty Spiele, another IBM Human Resources executive, on November 15, 2012 and Luq Naizi, an IBM executive, on November 16, 2012, informing them of his plans to leave IBM Nederland and begin employment with PwC Indonesia as Lead Partner Consulting.

70. During the phone calls with Tang, Spiele and Naizi, each one informed Vincent that they had already been notified in advance of the call of Vincent's plans to leave IBM Nederland and begin employment with PwC Indonesia as Lead Partner Consulting.

71. During each of the four phone calls with these various IBM executives, no one referred to PwC Indonesia as a competitor, nor did anyone indicate that Vincent would be facing legal action by IBM if he were to work at PwC Indonesia.

72. Accordingly, by letter dated November 16, 2012, Vincent gave notice of his resignation from IBM Nederland effective December 31, 2012.

### IBM Wrongfully Blocks Vincent's Account

73. On November 29, 2012, Vincent received an email notifying him that his Options awarded on February 25, 2003 would be expiring on February 24, 2013.

74. Vincent contacted Morgan Stanley and learned that Morgan Stanley erroneously did not execute his entire order from October. Only the Shares were sold but the Options were not executed or converted into cash.

75. Vincent again reiterated his request from October to execute the Options.

76. On December 3, 2012, Morgan Stanley emailed Vincent and informed him that IBM had placed a block on his account and, therefore, Morgan Stanley refused to execute Vincent's Options as requested.

77. On December 4, 2012, Vincent responded to Morgan Stanley explaining that IBM had not taken any legal action against him and again requesting the execution of his February 25, 2003 and March 8, 2005 Options.

78. By letter dated December 7, 2012, IBM Nederland informed Vincent of its belief that Vincent's new employment would violate the terms of the agreements governing his equity

grants and reserved its rights to invoke all possibilities for rescission of his equity grants. That letter made no reference to blocking Vincent's account.

79. To date, Morgan Stanley has not executed the Options as requested by Vincent and IBM continues to block Vincent's account.

80. The February 25, 2003 Options expired on February 24, 2003.

81. The February 25, 2003 and March 8, 2005 Options together are worth approximately $425,000.

## FIRST COUNTERCLAIM
### (Breach of Contract)

82. Vincent repeats and realleges the allegations of paragraphs 56 through 80 of the Counterclaims as if fully set forth herein.

83. The LTPP is an enforceable contract that IBM agreed to by issuing the Shares and the Options to Vincent.

84. Vincent has complied with all of his obligations under the LTPP.

85. Plaintiff has no basis under the LTPP to block Vincent's account and interfere with Vincent's right to execute his Options by virtue of his employment with PwC Indonesia.

86. IBM has breached its obligations under the LTPP by blocking Vincent's account and the execution of the Options.

87. Based on IBM's breach of the LTPP, Vincent is entitled to recover an amount to be determined at trial, but in no event less than $425,000, plus applicable interest.

## SECOND COUNTERCLAIM
### (Unjust Enrichment)

88. Vincent repeats and realleges the allegations of paragraphs 56 through 87 of the Counterclaims as if fully set forth herein.

89. By blocking Vincent's account and preventing him from executing the Options he was awarded in 2003 and 2005, IBM has been unjustly enriched at Vincent's expense. Equity and conscience require IBM to make restitution to Vincent.

90. As a result of the foregoing, Vincent has incurred damages in an amount to be determined at trial, but presently estimated to be not less than $425,000, plus applicable interest.

## THIRD COUNTERCLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

91. Vincent repeats and realleges the allegations of paragraphs 56 through 89 of the Counterclaims as if fully set forth herein.

92. Under New York law, there is implied in the LTPP a covenant of good-faith and fair dealing.

93. By entering into the LTPP, IBM made an implied covenant to interpret its terms fairly and act reasonably upon its promises.

94. IBM has acted oppressively and in bad-faith to deny Vincent the benefit of the parties' bargain.

95. IBM breached the LTPP's implied covenant of good faith and fair dealing by blocking Vincent's account and preventing the execution of his Options in bad faith after informing Vincent that PwC Indonesia was not a competitor of IBM and leading Vincent to believe that going to work for PwC Indonesia as Lead Partner Consulting would not violate any non-competition requirements.

96. As a consequence of IBM's breach of the LTPP's covenant of good-faith and fair dealing, Vincent has sustained damages in an amount to be determined at trial, but in no event less than $425,000, plus applicable interest.

428105_2/04025-0002

WHEREFORE, defendant, Charles Vincent, demands judgment as follows:

a) Dismissing IBM's complaint in its entirety;

b) Awarding Vincent damages in an amount to be determined at trial, but in no event less than $425,000, plus interest, on his first counterclaim;

c) Awarding Vincent damages in an amount to be determined at trial, but in no event less than $425,000, plus interest, on his second counterclaim;

d) Awarding Vincent damages in an amount to be determined at trial, but in no event less than $425,000, plus interest, on his third counterclaim;

e) Such other and further relief as to the Court appears just and proper.

Dated: New York, New York
       February 27, 2013

                                INGRAM YUZEK GAINEN
                                CARROLL & BERTOLOTTI, LLP

                                By: _____
                                    Dean G. Yuzek
                                    Jennifer B. Zourigui
                                Attorneys for Defendant
                                250 Park Avenue
                                New York, New York 10177
                                (212) 907-9600